IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tammy P. Sadek, | ) | C/A No. 0:13-2174-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Officer Brian Lambert; Officer Tony Stewart; Rock Hill Police Department; County of York, South Carolina; and City of Rock Hill, South Carolina, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

The plaintiff, Tammy P. Sadek ("Sadek"), filed this action against the defendants alleging violation of her constitutional rights.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the motion to dismiss filed by Defendant County of York. (ECF No. 6.) Sadek filed a response in opposition. (ECF No. 9.) Following a hearing on October 15, 2013, the parties filed supplemental memoranda. (ECF Nos. 26 & 27.) Having reviewed the parties' submissions and the applicable law, the court finds that York County's motion should be granted.

### DISCUSSION

This action stems from an alleged unconstitutional seizure of the plaintiff by City of Rock Hill police officers. The plaintiff's only claim against York County is a statutory one pursuant to a state law whose origin dates back to 1871. The statute provides:

> Any citizen who shall be hindered, prevented or obstructed in the exercise of the rights and privileges secured to him by the Constitution and laws of the United States

---

[1] The defendants removed this action from the York County Court of Common Pleas.



or by the Constitution and laws of this State or shall be injured in his person or property because of his exercise of the same may claim and prosecute the county in which the offense shall be committed for any damages he shall sustain thereby, and the county shall be responsible for the payment of such damages as the court may award, which shall be paid by the county treasurer of such county on a warrant drawn by the governing body thereof. Such warrant shall be drawn by the governing body as soon as a certified copy of the judgment roll is delivered to them for file in their office.

S.C. Code Ann. § 16-5-60. The only apparent South Carolina appellate decision interpreting this statute is from 1925. In Brazzill v. Lancaster County, 128 S.E. 728 (S.C. 1925), the South Carolina Supreme Court explained that this Reconstruction-era law "should be read in reference to the time at which it was enacted" and characterized the statute as one protecting "the political rights and liberties of the citizens of the state."[2] Id. at 729. In support of its motion, York County argues that § 16-5-60 was impliedly repealed by the South Carolina Tort Claims Act in 1986. For the reasons that follow, the court agrees.

*Historical Background of Sovereign Immunity*

The common law doctrine of sovereign immunity shields the state and its political subdivisions from suit. While the General Assembly limited governmental immunity from time to time through statutory enactments such as § 16-5-60, see Hon. C. Tolbert Goolsby, Jr. & Ginger D. Goforth, The South Carolina Tort Claims Act: A Primer and Then Some 7 (3d ed. 2003), common law immunity for the state and its political subdivisions generally remained intact until the Supreme Court judicially abolished it in 1985 in the landmark decision of McCall v. Batson, 329 S.E.2d 741

---

[2] Although York County contends that the right at issue here is not a "political" right within the meaning of Brazzill, it cites no authority for that proposition. In any event, the court need not resolve the issue of whether an alleged unconstitutional seizure of a person implicates a "political" right in light of the court's conclusion on the issue of implied repeal.



(S.C. 1985). The General Assembly then promptly restored sovereign immunity legislatively, with a limited waiver for certain tort actions, through the South Carolina Tort Claims Act.

This progression of events has been summarized by the South Carolina Supreme Court as follows:

> Historically, all persons were barred from bringing tort claims against governmental entities. The doctrine of sovereign immunity began to come under fire as being "archaic and outmoded." The legislature subsequently passed various exceptions to the doctrine. We noted, however, the exceptions reflected "a scattered patchwork of sovereign liability that lack[ed] continuity, logic or fairness." Thus, in McCall, we abolished the doctrine of sovereign immunity.
>
> In response to our decision in McCall, the legislature implemented a comprehensive act providing for the logical disposition of governmental liability. The Act first completely restores sovereign immunity. The Act then provides specific waivers and limitations on actions against governmental entities. Thus, the Tort Claims Act is a limited waiver of governmental immunity.

Murphy v. Richland Mem'l Hosp., 455 S.E.2d 688, 690 (S.C. 1995) (citations omitted) (Toal, J.).

*Implied Repeal*

Generally, the legislature is presumed to have knowledge of previous legislation, and of judicial decisions construing that legislation, when later statutes are enacted concerning related subjects. Shirley's Iron Works, Inc. v. City of Union, 743 S.E.2d 778, 784 (S.C. 2013). The law presumes that the General Assembly would expressly repeal existing laws if it intends to do so. Id. Therefore, "repeal by implication is disfavored, and is found only when two statutes are incapable of any reasonable reconcilement." Aakjer v. City of Myrtle Beach, 694 S.E.2d 213, 216 (S.C. 2010). For a court to find an implied repeal, "the repugnancy must be plain," and courts should try to construe them so that both can stand. Id. When the two statutes are incapable of reasonable reconcilement, the last statute passed will prevail. Id. "A later statute on a given subject, not

repealing an earlier one in terms, is not to be taken as a repeal by implication, unless it is plainly repugnant to the former, *or* unless it fully embraces the whole subject matter." State v. Hood, 188 S.E. 134, 136 (S.C. 1936) (emphasis added).

Mindful of these cautions, the court nonetheless concludes that the Tort Claims Act impliedly repealed § 16-5-60.  As discussed above, the Tort Claims Act comprehensively addressed governmental immunity by restoring immunity of the sovereign as it existed at the common law—that is, absolute immunity from tort actions—and provided for limited exceptions to that immunity within the Tort Claims Act, thus eliminating the "scattered patchwork of sovereign liability that lack[ed] continuity, logic or fairness" which included § 16-5-60.  Murphy, 455 S.E.2d at 690 (quoting McCall, 329 S.E.2d at 742); see S.C. Code Ann. § 15-78-20(b) ("The General Assembly in this chapter intends to grant the State [and] its political subdivisions . . . immunity from liability and suit *for any tort* except as waived *by this chapter*.") (emphasis added); § 15-78-200 ("Notwithstanding any provision of law, this chapter, the "South Carolina Tort Claims Act", is the exclusive and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employee's official duty."); Murphy, 455 S.E.2d at 690 (describing the Tort Claims Act as a "comprehensive act" providing for the logical disposition of governmental liability).

Moreover, independent of the Tort Claims Act's full embrace of the subject of governmental immunity, see Hood, 188 S.E. at 136, several irreconcilable conflicts are presented by the two statutes.  First, the Tort Claims Act expressly and completely restores sovereign immunity.  Murphy, 455 S.E.2d at 690.  While the Act itself then provides for limited waivers and exceptions regarding that immunity, "[a]ll other immunities applicable to a governmental entity, its employees, and agents



are expressly preserved." § 15-78-20(b). These provisions are incapable of reconcilement with § 16-5-60's unlimited waiver of a county's immunity from suit based on wrongful acts of third parties.

Next, and specifically applicable to the circumstances presented in the case at bar, the Tort Claims Act expressly provides the exclusive remedy for torts committed by employees of a governmental entity while acting within the scope of the employee's official duty, *notwithstanding any provision of law*. § 15-78-200. Construing § 16-5-60 also to provide a remedy against York County for the alleged wrongdoing of another governmental entity's police officers would be repugnant to the express language of the Tort Claims Act. See Paddock Equip. Co. v. Univ. of S.C., 345 S.E.2d 749, 750 (S.C. Ct. App. 1986) (discussing that whether a new remedy created by a statute is exclusive or merely cumulative to an existing statutory remedy is determined by the express terms of the statute prescribing the new remedy).

Furthermore, the Tort Claims Act provides for limited liability of a governmental entity for the wrongdoing of its own employees whereas § 16-5-60 contrarily provides for unlimited and strict liability of a county for the acts of others. Such a result is contrary to both the plain language of the Tort Claims Act and the recorded legislative intent of the Act.

First, the Tort Claims Act expressly limits York County's liability for acts or omissions of non-employees. Section 15-78-60 provides a detailed list of exceptions to the Act's waiver of immunity, and subsection (20) provides: "The governmental entity is not liable for a loss resulting from . . . an act or omission of a person other than an employee . . . ." § 15-78-60(20). Thus, a county's unlimited and strict liability for acts or omissions of third parties who hinder, prevent, or obstruct a citizen in the exercise of his or her political rights within the territorial bounds of the county flies in the face of the express language of the Tort Claims Act.



The plaintiff's attempt to reconcile the express limitation in § 15-78-60(20) with § 16-5-60 fails. She relies on two cases addressing § 15-78-60(20)'s exception to the Act's waiver of immunity. The first, Madison ex rel. Bryant v. Babcock Center, Inc., 638 S.E.2d 650 (S.C. 2006), is easily distinguishable. The South Carolina Supreme Court in Madison found that the exception contained in § 15-78-60(20) did not insulate the State Department of Disabilities and Special Needs from liability for a tort claim even though an independent contractor of the state may have committed the alleged wrongful conduct. However, this conclusion derived from the court's determination that the Department owed an independent common law duty of care to the plaintiff. Thus, the Madison Court did not permit the Department to be held vicariously or strictly liable for the acts of its independent contractor but rather simply found, consistent with the Tort Claims Act, that the Department could be held liable for *its own torts*. Madison, 638 S.E.2d at 660. In the case at bar, no such common law duty exists.[3]

Moreover, the plaintiff's argument that § 16-5-60 creates a *statutory* duty fails. By its terms, and as the plaintiff recognizes, § 16-5-60 holds a county strictly liable—that is, liability attaches irrespective of any duty of the county. See W. Page Keeton et al., Prosser and Keeton on Torts § 75 (5th ed. 1984) (defining strict liability as liability that is imposed apart from a breach of a duty); (Pl.'s Suppl. Mem. Opp'n Def.'s Mot. Dismiss at 2 (describing § 16-5-60 as imposing strict liability), ECF No. 26 at 2); cf. Schall v. Sturm, Ruger Co., Inc., 300 S.E.2d 735, 736 (S.C. 1983) (observing that the South Carolina statute imposing strict liability for defective products "renders irrelevant the concept of duty"). Further, the statute does not create a new right but is merely

---

[3] The Madison Court expressly declined to decide whether the Department owed the plaintiff a statutory duty. Madison, 638 S.E.2d at 662.

Page 6 of 10



remedial.  See Edwards v. State Law Enforcement Div., 720 S.E.2d 462, 466 (S.C. 2011) ("A statute is remedial where it creates new remedies for existing rights . . . ."); cf. Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'") (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Indeed, the plaintiff herself appears to acknowledge this.  In her supplemental brief, she describes § 16-5-60 as creating a "duty to *compensate* [the plaintiff] for her injuries," as opposed to characterizing it as a duty to guard her from them.  (See Pl.'s Suppl. Mem. Opp'n Def.'s Mot. Dismiss at 3, ECF No. 26 at 3) (emphasis added).  Moreover, even assuming the statute did create a duty rather than only a remedy, the plaintiff's contention that § 16-5-60 creates a statutory duty simply begs the question, as any such duty is in direct contravention of the later-enacted Tort Claims Act.

Similarly, the second case upon which the plaintiff relies, Smith v. Reg'l Med. Ctr. of Orangeburg & Calhoun Counties, 713 S.E.2d 656 (S.C. Ct. App. 2011), supports the court's conclusion regarding § 15-78-60(20) rather than the plaintiff's, as the Smith Court concluded in applying this provision that governmental hospitals, unlike private ones, cannot be held liable for the acts or omissions of third-party independent contractors.  Smith, 713 S.E.2d at 659.

Finally, in addition to being precluded by the express language of the Tort Claims Act, the situation urged by the plaintiff where a county is insulated to a certain, specified degree from acts or omissions of its own employees while simultaneously subjected to unlimited, strict liability for the acts or omissions of third parties cannot have been intended by the legislature.  See § 15-78-20(a) ("[W]hile total immunity from liability on the part of the government is not desirable, see McCall v. Batson, neither should the government be subject to unlimited nor unqualified liability for its



actions. . . . Consequently, it is declared to be the public policy of the State of South Carolina that the State, and its political subdivisions, *are only liable for torts within the limitations of this chapter* and in accordance with the principles established herein.") (emphasis added); Florence Cnty. Democratic Party v. Florence Cnty. Republican Party, 727 S.E.2d 418, 420 (S.C. 2012) ("The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. . . . This Court will not construe a statute in a way which leads to an absurd result or renders it meaningless.").

The plaintiff argues that the two statutes can be reconciled because § 16-5-60 does not provide for a right of action or remedy for *torts* and therefore does not conflict with the Tort Claims Act. The court concludes, however, that the remedy contained in § 16-5-60 is indeed based in tort. As discussed above, § 16-5-60 essentially provides for strict liability of a county when a plaintiff is hindered, prevented, or obstructed from exercising his or her political rights—by anyone. Thus, this statute provides a remedy against a county based on someone else's wrongdoing, or tort. See Keeton et al., supra, § 1 ("[A] tort is a civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages."); (see also Act No. 337, 1871 S.C. Acts 559 (containing the preamble to § 16-5-60 discussing threatenings, intimidation, and violence being used in portions of the state; that officers of the law were being hindered, prevented, and obstructed in the discharge of their duties; and that armed, disguised, and lawless persons were threatening, maltreating, and assassinating peaceable and defenseless citizens), ECF No. 27-1 at 1).

Moreover, § 16-5-60 is codified in Title 16, the penal code entitled "Crimes and Offenses," and contained in Chapter 5, entitled "Offenses Against Civil Rights." While South Carolina law recognizes that a penal statute may also serve as the basis for civil liability, cf. Tobias v. Sports Club,



Inc., 474 S.E.2d 450, 452 (S.C. Ct. App. 1996), it generally views such a cause of action as sounding in tort.  See, e.g., Culler v. Blue Ridge Elec. Co-op., Inc., 422 S.E.2d 91 (S.C. 1992) (recognizing the tort of wrongful discharge based on employer's violation of a penal code).  In fact, a South Carolina circuit judge facing this exact issue has expressly addressed the nature of the remedy contained in § 16-5-60 and similarly concluded that it sounds in tort. (See Order at 4-5, Anderson v. City of Florence, 1991-CP-21-983 (Anderson, Ralph K. Jr., J.), ECF No. 27-2.)  Finally, as recognized by the United States Supreme Court, civil liability for violations of civil or constitutional rights sounds in tort.  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305-06 (1986) (discussing a "species of tort liability" created by the federal remedial civil rights statute, 42 U.S.C. § 1983); see also City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 727 (1999) (Scalia, J., concurring) (discussing "constitutional tort[s]").

## RECOMMENDATION

Accordingly, the court concludes that § 16-5-60, enacted to provide strict liability of counties for constitutional torts committed by others, is repugnant to and therefore was impliedly repealed by the South Carolina Tort Claims Act's complete restoration of sovereign immunity and limited waiver for certain torts committed by governmental employees.  The plaintiff's cause of action against York County under § 16-5-60 therefore fails to state a claim upon which relief can be granted, and the court recommends that York County's motion to dismiss (ECF No. 6) be granted.

December 17, 2013  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).